IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIAM MCINTYRE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:22-cv-1267-K |
| | § | |
| COLLIN BRYAN CONSTRUCTION | § | |
| LLC and BRIAN JOHNSON, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

William McIntyre filed a motion for default judgment against Collin Bryan Construction LLC ("CBC") and Brian Johnson. *See* Dkt. No. 16. United States District Judge Ed Kinkeade has referred this motion to the undersigned magistrate judge. *See* Dkt. No. 20.

The undersigned now enters the following findings of fact, conclusions of law, and recommendation that the Court grant McIntyre's motion for default judgment.

**Background**

This case concerns a claim of unpaid minimum wages and unpaid overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. *See* Dkt. No. 1 at 1. McIntyre alleges that he was employed by CBC, a construction business, from approximately May 2, 2022 to June 2, 2022 at a rate of $25.00 per hour plus bonus compensation. *See id.* McIntyre claims that he worked hours in excess of forty hours per week but was not paid overtime wages for this period. *See id.* at 2. He

-1-

also claims that he was also not paid at all for work he did between approximately May 23, 2022 to June 2, 2022. *See id.* at 1. The pay date for that period was on June 10, 2022. *See id.*

McIntyre alleges that CBC is an enterprise engaged in commerce, that it employed two or more employees, and that it had annual gross sales or business volume in excess of $500,000.00 during 2022. *See id.* at 3. McIntyre alleges that Johnson was a member, director, and owner of CBC. *See id.* Johnson instructed McIntyre what work to perform, and where and when to perform it. *See id.* at 4.

On June 12, 2022, McIntyre filed this suit in this Court. *See id.* On June 21, 2022, McIntyre claims to have received a payment from CBC of $1,200.00. *See* Dkt. No. 16 at 25.

McIntyre claims that Defendants actively avoided service until they were served on September 12, 2022. *See id.* at 9; Dkt. Nos. 10 and 12. The Clerk of Court made an entry of default as to Defendants on October 11, 2022. *See* Dkt. No. 14.

McIntyre then filed this motion for default judgment on December 19, 2022. *See* Dkt. No. 16.

### Legal Standards

Federal Rule of Civil Procedure 55(b)(2) governs applications to the Court for default judgment. *See* FED. R. CIV. P. 55(b)(2). A plaintiff seeking a default judgment must establish: (1) that the defendant has been served with the summons and complaint and that default was entered for its failure to appear; (2) that the defendant is neither a minor nor an incompetent person; (3) that the defendant is not in military

service or not otherwise subject to the Soldiers and Sailors Relief Act of 1940; and (4) that, if the defendant has appeared in the action, the defendant was provided with notice of the application for default judgment at least three days prior to the hearing. *See Arch Ins. Co. v. WM Masters & Assocs., Inc.*, No. 3:12-cv-2092-M, 2013 WL 145502, at *2-*3 (N.D. Tex. Jan. 14, 2013). The plaintiff must also make a *prima facie* showing there is "jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

> In the Fifth Circuit, three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment by the district court. *See New York Life Ins. Co. v. Brown,* 84 F.3d 137, 141 (5th Cir. 1996). A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure. *See id.* The clerk will enter default when default is established by an affidavit or otherwise. *See id.* After the clerk's entry of default, a plaintiff may apply to the district court for a judgment based on such default. *See id.*
>
> The Fifth Circuit favors resolving cases on their merits and generally disfavors default judgments. *See Rogers v. Hartford Life & Accident Ins. Co.,* 167 F.3d 933, 936 (5th Cir. 1999); *see also Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n,* 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the federal rules and resorted to by the courts only in extreme situations."). But this policy is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Rogers,* 167 F.3d at 936 (quoting *Pelican Prod. Corp. v. Marino,* 893 F.2d 1143, 1146 (10th Cir. 1990) (internal quotations omitted)); *see also Merrill Lynch Mortg. Corp. v. Narayan,* 908 F.2d 246, 253 (7th Cir. 1990) (noting that default judgments allow courts to manage their dockets "efficiently and effectively").

*Arch Ins. Co.*, 2013 WL 145502, at *2-*3.

Before entering a default judgment, a court should consider any relevant factors. Those factors may include "(1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) harshness of default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion." *Arch Ins. Co.*, 2013 WL 145502, at *3 (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). The Court should also consider whether the defendant has a meritorious defense to the complaint. *See id.* Further, "a defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Lindsey,* 161 F.3d at 893.

An entry of default "does not establish the amount of damages. After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages." *United States of Am. for Use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (cleaned up); *cf. Jackson v. FIE Corp.*, 302 F.3d 515, 524-31 (5th Cir. 2002) (holding that jurisdictional allegations and findings supporting a default judgment are not entitled to preclusive effect in the personal-jurisdiction context of Federal Rule of Civil Procedure 60(b)(4)). A court may enter default judgment against a party and determine damages without the benefit of an evidentiary hearing "where the amount claimed is a liquidated sum or one capable of mathematical calculation." *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998) (cleaned up).

## Analysis

### I.    The Court has subject matter jurisdiction and personal jurisdiction.

McIntyre has shown that there is jurisdiction over the subject matter and over the parties. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this is a "civil action[] arising under the … laws … of the United States." 28 U.S.C. § 1331. Specifically, this is a civil action arising under the FLSA, a federal law.

This court has personal jurisdiction over the parties. "[T]he Texas long-arm statute extends to the limits of federal due process." *Bulkley & Associates, L.L.C. v. Dep't of Indus. Relations, Div. of Occupational Safety & Health of the State of California*, 1 F.4th 346, 351 (5th Cir. 2021). Federal due process requires that "the suit aris[es] out of or relate[s] to the defendant[s'] contacts with" Texas. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

McIntyre alleges that some of the locations that he performed work for CBC, for which he was not paid overtime wages or at all, were in Texas. *See* Dkt. No. 1 at 6. And so this suit arises out of or relates to Defendants' contacts with Texas, and the Court has personal jurisdiction over the parties.

### II.    The procedural requirements for default judgment have been met.

McIntyre has satisfied the prerequisites for entry of default judgment against Defendants. Defendants were served on September 12, 2022. *See* Dkt. Nos. 10 and 12. The Clerk of Court made an entry of default as to both Defendants on October 11, 2022. *See* Dkt. No. 14. CBC is not a natural person and so cannot be a minor, incompetent person, or in military service. There is no evidence in the record to

suggest that Johnson is a minor or an incompetent person. McIntyre establishes through affidavit that Johnson is not in military service. *See* Dkt. No. 21. Finally, Defendants have not appeared in the action and no hearing was held on the motion for default judgment, and so giving notice to Defendants was not necessary.

## III.    McIntyre's FLSA claim supports entry of default judgment.

The Court takes as true the facts asserted by a plaintiff against a defaulting defendant. *See Escalante v. Lidge*, 34 F.4th 486, 492 (5th Cir. 2022). The defendant, by its default, admits the plaintiff's well-pleaded allegations of fact. *See id.*

When determining whether the requested default is "'supported by well-pleaded allegations' and has 'a sufficient basis in the pleadings,'" the Fifth Circuit "draw[s] meaning from the case law on Rule 8, which sets forth the standards governing the sufficiency of a complaint." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 505 F.2d 1200, 1206 (5th Cir. 1975)).

"Rule 8(a)(2) requires a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. (8)(a)(2)). "The purpose of this requirement is to give the defendant fair notice of what the claim is and the grounds on which it rests." *Id.* Ultimately, "[t]he factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up)).

-6-

The Court should grant McIntyre's motion for default judgment as to his FLSA claim.

McIntyre alleges violations of the FLSA. The FLSA contains a minimum wage provision and an overtime wage provision. Section 206, the minimum wage provision, provides that "every employer shall pay to each of his employees … wages at … not less than … $7.25 an hour." 29 U.S.C. § 206(a). Section 207, the overtime wage provision, provides that "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

To state a claim under Sections 206 and 207, a plaintiff must plausibly allege: "(1) that an employer-employee relationship existed during the [relevant] time [period and] … (2) that the employee engaged in activities covered by the FLSA." *Johnson v. Heckmann Water Resources, Inc.*, 758 F.3d 627, 630 (5th Cir. 2014). The plaintiff must also allege (3) that the employer violated the FLSA's minimum wage requirements; (4) the amount of minimum wage compensation due; (5) that the employer violated the FLSA's overtime wage requirements; (6) the amount of overtime compensation due. *See id.*; *Flores v. Act Event Services, Inc.*, 55 F. Supp. 3d 928, 935 (N.D. Tex. 2014).

## A. Employer-Employee Relationship

An "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). An "'employee' means

any individual employed by an employer." 29 U.S.C. § 203(e)(1). The United States Court of Appeals for the Fifth Circuit has explained that the "remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." *McLaughlin v. Seafood, Inc.,* 867 F.2d 875, 877 (5th Cir.1989).

The Fifth Circuit uses the "economic reality" test to determine whether there is an employer-employee relationship. *See Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012). "[T]he court considers whether the alleged employer: '(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Id.* (quoting Williams *v. Henagan,* 595 F.3d 610, 620 (5th Cir.2010)). "In cases where there may be more than one employer, this court 'must apply the economic realities test to each individual or entity alleged to be an employer.'" *Id.* (quoting *Watson v. Graves,* 909 F.2d 1549, 1553 (5th Cir.1990)). "The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." *Id.* at 357.

As to CBC, McIntyre alleges that he "was employed by CBC in its construction business operations from approximately May 2, 2022 to approximately June 2, 2022," which includes the period in which he alleges he was not paid for his work. Dkt. No. 1 at 5. This is sufficient to plead that there was an employer-employee relationship between McIntyre and CBC.

As to Johnson, McIntyre alleges that Johnson was also his employer. McIntyre alleges that "Johnson possessed the power to hire and fire employees of the CBC" and that "Johnson hired Plaintiff." Dkt. No. 1 at 4. He alleges that "Johnson possessed the power to set the work schedules for employees of CBC" and "routinely set Plaintiff's weekly work schedule and/or instructed Plaintiff what work to perform, where to perform it, and when to perform it." *Id.* He alleges that "Johnson determined Plaintiff's rates of pay and methods of pay." *Id.*

McIntyre's pleadings meet three of the four factors from the "economic reality" test. This is sufficient to plead that there was an employer-employee relationship between McIntyre and Johnson.

### B. Covered Activities

Plaintiff must prove that he was an employee "engaged in commerce or in the production of goods for commerce" or "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a), 207(a).

The first type of coverage is known as "individual coverage," and the second type of coverage is known as "enterprise coverage." *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992). McIntyre asserts enterprise coverage. *See* Dkt. No. 16 at 19.

The FLSA defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). "[A]n employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on

such goods, or in any closely related process or occupation directly essential to the production thereof, in any State." 29 U.S.C. § 203(j)

As to enterprise coverage, the FLSA defines an "enterprise engaged in commerce or in the production of goods for commerce" as one that "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and … is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)." 29 C.F.R. § 203(s)(1).

McIntyre alleges that CBC employed "employees who regularly handled, sold, and/or otherwise worked on goods and/or materials in their daily work that are/were moved in and/or produced for commerce. Examples of such goods and/or materials include vehicles, fuel, construction and/or remodeling equipment, construction and/or remodeling materials, computers, and phones." Dkt. No. 1 at 3. McIntyre also alleges that CBC had "annual gross sales or business volume in excess of $500,000 during 2022." *Id.*

This is sufficient to plead that CBC is covered by the FLSA under an enterprise coverage theory.

## C. Violation of the Minimum Wage and Overtime Wage Provisions

McIntyre alleges that Defendants violated the minimum wage provision by failing to pay him "wages for the hours he worked in the workweeks between

approximately May 23, 2022 and June 2, 2022," the pay date for which was June 10, 2022. Dkt. No. 6.

McIntyre also alleges that he "routinely worked in excess of 40 hours per seven-day workweek" but that "Defendants did not pay Plaintiff time and one-half his regular rate of pay for all hours worked over 40 in each and every seven-day workweek." Dkt. No. 1 at 13. McIntyre alleges the exact hours that he worked overtime in his motion for default judgment. *See* Dkt. No. 16 at 28.

These allegations are sufficient to plead that Defendants violated the minimum wage and overtime wage provisions.

McIntyre notes that Defendants paid him $1,200.00 on June 21, 2022. Dkt. No. 16 at 25. But "[a] cause of action accrues at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261 (5th Cir. 1987), *opinion modified on reh'g*, 826 F.2d 2 (5th Cir. 1987). And so this late payment of wages can still be the basis for a minimum wage and an overtime wage cause of action.

### D. Minimum Compensation and Overtime Compensation Due

McIntyre calculates the minimum wage compensation and overtime wage compensation that he is due in the motion for default judgment. *See* Dkt. No. 16 at 25-29. He alleges that he is owed a total of $783.00 in minimum wages. *Id.* at 25. He alleges that he is owed a total of $3115.13 in overtime wages. *Id.* at 28. These

allegations are sufficient to plead minimum compensation and overtime compensation due.

## IV. Consideration of other factors support entry of default judgment.

Although default judgment is a harsh remedy, Defendants' failure to answer McIntyre's complaint supports default judgment on his FLSA claim. There are no material issues of fact at issue as Defendants admitted McIntyre's well-pleaded allegations of fact by their default. There has not been substantial prejudice against Defendants. There are clearly established grounds for default: Defendants failed to answer McIntyre's complaint. There is no indication that Defendants' default was caused by good faith mistake or excusable neglect. McIntyre alleges that Defendants attempted to avoid personal service. *See* Dkt. No. 16 at 9. And so the Court would not feel obligated to set aside a default on Defendants' motion. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

## V. The Court should award McIntyre damages, attorneys' fees, costs, and post-judgment interest.

### A. Damages

The allegations in McIntyre's FLSA claim, taken as true, entitle him to damages.

Ordinarily, damages will not be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman,* 605 F.2d 854, 857 (5th Cir. 1979). But, when the amount of damages and/or costs can be determined with certainty by reference to the pleadings and supporting

documents, and when a hearing would not be beneficial to the court, a hearing is unnecessary. *See Leedo Cabinetry,* 157 F.3d at 414; *see also James v. Frame,* 6 F.3d 307, 310 (5th Cir. 1993). A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *James,* 6 F.3d at 311 (internal citations omitted).

Under the FLSA, "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

A plaintiff's declaration is sufficient to establish damages under the FLSA. *See Gomez v. Managing Innovation & Tech., Inc.*, No. 3:14-CV-0936-M, 2015 WL 6150905 at *2 (N.D. Tex. Oct. 15, 2015). Especially in this case, where McIntyre alleges that Defendants "did not make or keep an accurate record of the daily hours worked by Plaintiff" or "of the hours worked by Plaintiff per seven-day workweek," McIntyre's sworn declaration is sufficient to substantiate his claims for damages. Dkt. No. 16 at 22; *see Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456 (2016) ("when employers violate their statutory duty to keep proper records, and employees thereby have no way to establish the time spent doing uncompensated work, the 'remedial nature of [the FLSA] and the great public policy which it embodies ... militate against making' the burden of proving uncompensated work 'an impossible hurdle for the employee.... an employee has carried out his burden if he proves that he has in fact performed

work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'") (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).

### i. Unpaid Minimum Wages

McIntyre alleges that he was not paid at all for the pay period between May 23, 2022 and June 2, 2022, during which he worked 108 hours. *Id.* at 25. McIntyre is owed a minimum wage of $7.25 for the hours he worked during that pay period. *See* 29 U.S.C. § 206(a). He alleges that he is owed a total of $783.00 in minimum wages for that pay period. *See* Dkt. No. 16 at 25.

To calculate the minimum wages Defendants owe McIntyre, the undersigned multiplies the 108 hours McIntyre worked by the $7.25 minimum wage for a total of $783.00 owed.

### ii. Unpaid Overtime Wages

"If the employee is employed solely on the basis of a single hourly rate, the hourly rate is the 'regular rate,'" the rate at which an employee must be compensated for overtime. 29 C.F.R. § 778.110; 29 U.S.C. § 207. The regular rate includes "all renumeration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e). Non-discretionary bonuses, bonuses "paid pursuant to any prior contract, agreement, or promise," are included in the regular rate of pay. 29 C.F.R. § 778.211(c). "Where a bonus payment is considered a part of the regular rate at which an employee is employed, it must be included in computing his regular hourly rate of pay and overtime compensation." 29 C.F.R. § 778.209(a).

-14-

"When the amount of the bonus can be ascertained, it must be apportioned back over the workweeks of the period during which it may be said to have been earned. The employee must then receive an additional amount of compensation for each workweek that he worked overtime during the period equal to one-half of the hourly rate of pay allocable to the bonus for that week multiplied by the number of statutory overtime hours worked during the week." *Id.*; *see also Mitchell v. Corelogic, Inc.*, No. SACV172274DOCDFMX, 2018 WL 6118444 at *10 (C.D. Cal. Aug. 7, 2018) ("[T]ake the total incentive payment, divide by the total hours attributable to the bonus, then divide that number in half to get the rate which is multiplied by the total overtime hours…. [In other words,] divide the total bonus by the number of hours worked by the employee, to determine the extra 50% of that rate that is due as an overtime premium on the bonus.")

McIntyre alleges that he was not paid overtime for the pay periods between May 8, 2022 and June 2, 2022, during which he worked 80 overtime hours. *See* Dkt. No. 16 at 28. McIntyre is owed one and a half times his regular rate of compensation for the overtime hours he worked during those pay periods. *See* 29 U.S.C. § 207(a)(1). He alleges his hourly rate to be $25.00 per hour and his total bonus to be $690.80. *See* Dkt. No. 16 at 28. He calculates that he is owed a total of $3115.13 in overtime wages for those pay periods. *See id.*

To calculate the overtime wages Defendants owe McIntyre, the undersigned multiplies the regular rate of $25.00 by 1.5 and then multiplies that by the 80

overtime hours McIntyre worked for a total of $3,000.00 of overtime wages before the bonus.

To calculate the overtime wages Defendants owe McIntyre on the bonus, the undersigned divides the $690.80 of total bonus McIntyre received by the 240 total hours McIntyre worked that were attributable to that bonus for a regular rate of bonus pay of about $2.8783. The undersigned then multiplies the regular rate of bonus pay by 0.5 because McIntyre was already paid the bonus and so only the remaining 0.5 of the total 1.5 of the regular rate of bonus is owed. Finally, the undersigned multiplies that number by the 80 hours of overtime McIntyre worked for a total of $115.13 of overtime wages owed on the bonus.

In total, the undersigned calculates that Defendants owe McIntyre $3,115.13 in overtime wages.

### iii. Liquidated Damages

McIntyre is also owed liquidated damages in an equal amount to the unpaid minimum wages and overtime wages he is owed. *See* 29 U.S.C. § 216(b). "Once mandatory, the assessment of liquidated damages is now discretionary; the district court can now decline to award such damages (or reduce the amount) if the court concludes that the employer acted in good faith and had reasonable grounds to believe that its actions complied with the FLSA. However, the employer must carry a substantial burden to demonstrate good faith and a reasonable belief that its actions did not violate the FLSA." *Picasso v. Halal Beasley Ranch, LLC*, No. 3:18-CV-53, 2019 WL 4054036, at *1 (S.D. Tex. Aug. 28, 2019) (cleaned up). "Here, that burden is

necessarily unmet, as the defendants have defaulted." *Id.* And so the Court should order that Defendants owe McIntyre a total of $3,898.13 in liquidated damages.

### iv. Late Compensation of Wages

Defendants paid McIntyre $1,200.00 on June 21, 2022, after the June 10, 2022 paydate on which McIntyre's wages were owed. This sum paid must be deducted from the unpaid wages. After this deduction, McIntyre is owed $2,698.13 in unpaid wages.

This does not change the amount that McIntyre is owed in liquidated damages. "A cause of action accrues at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *Halferty*, 821 F.2d at 271. "Delayed payment of wages does not preclude the recovery of liquidated damages because liquidated damages are intended 'to compensate employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due.'" *Novick v. Shipcom Wireless, Inc.*, No. 4:16-CV-00730, 2018 WL 5276299 at *3 (S.D. Tex. Oct. 24, 2018), *aff'd*, 946 F.3d 735 (5th Cir. 2020) (quoting *York v. City of Wichita Falls, Tex.*, 763 F.Supp. 876, 882-83 (N.D. Tex. 1990)).

And so, in total, Defendants owe McIntyre $6,596.26 in damages.

### B. Attorneys' Fees

McIntyre seeks reasonable attorneys' fees under 29 U.S.C. § 216(b), which provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the

defendant, and costs of the action." McIntyre requests an award of $11,925.00 for reasonable attorneys' fees. *See* Dkt. No, 16 at 31.

"This Court uses the 'lodestar' method to calculate attorney's fees." *Heidtman v. Cty. Of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). The lodestar is calculated by multiplying the number of hours that an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *See Smith v. Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). The parties seeking reimbursement of attorneys' fees bear the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The Court should use this time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *See id*. The hours remaining are those reasonably expended.

There is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010). "However, after calculating the lodestar, a district court may enhance or decrease the amount of attorney's fees based on the relative weights of the twelve factors set forth in [*Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974)]." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). Because the lodestar is presumed to be reasonable, it should be modified only in exceptional cases. *See Watkins*, 7 F.3d at 457.

The requested attorneys' fee award is supported by the sworn Declaration of Allen R. Vaught, the attorney representing McIntyre. *See* Dkt. No. 17, Ex. 1. The

-18-

declaration is supported by a table detailing the number of hours worked, the date the work was completed, any reduction in hours worked as billing judgment, and a narrative description of the work done. *See id.* at 16-18. In total, Vaught did 55 hours of work in this case. *See id.* After billing judgment, McIntyre seeks attorneys' fees for 23.85 hours of work done by Vaught. *See id.* The requested hourly billing rate for Vaught is $500.00. *See id.* at 14.

Vaught declares that he has been a licensed attorney in Texas for over 24 years. *See id.* at 7. He declares that the requested hourly billing rate is reasonable and customary for his employment law legal services in and around Dallas County. *See id.* at 14. He gives examples of cases in which attorneys' requested billing rates were found reasonable where the requested rates were over $600.00 and the attorneys had less experience than him. The undersigned finds the requested hourly billing rates to be reasonable given Dallas area market rates for attorneys with similar experience. *See generally Vanliner Ins. Co. v. DerMargosian*, No. 3:12-cv-5074-D, 2014 WL 1632181, at *2 (N.D. Tex. Apr. 24, 2014) (noting that the Court is an expert on the reasonableness of attorneys' fees).

Multiplying the hours for which McIntyre seeks attorneys' fees by the requested hourly billing rate gives a lodestar of $11,925.00. The undersigned has considered the *Johnson* factors and finds that none of them weigh in favor of modifying the lodestar. The Court should award $11,925.00 in attorneys' fees.

### C. Costs

McIntyre also seeks $996.73 in costs. *See* Dkt. No. 17 at 18-19. In particular, McIntyre seeks $402.00 for court filing fees, $7.00 for research fees, $585.00 for process server fees, and $2.73 for postage. *Id.*

28 U.S.C. § 1920 provides an enumerated list of items that a court may tax as costs including: fees of the clerk; fees of the court reporter; fees for printing and witnesses; fees for copies necessary for use in the case; docket fees; and compensation for court appointed experts. *See* 28 U.S.C. § 1920. The United States Supreme Court has ruled that, where an expense is not enumerated in Section 1920, it may be awarded only when explicit statutory authorization to do so can be found in other governing law. *See Mota v. The Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001) (citing *Crawford Fitting Co. v. J. T. Gibbons Inc.*, 482 U.S. 437, 444-45 (1987)). And the Supreme Court has held that the term "costs" as used in Federal Rule of Civil Procedure 54(d) is defined by Section 1920. *See Crawford Fitting*, 482 U.S. at 441-42.

Costs for legal research, process servers, and postage are not included in this enumerated list. McIntyre provides no additional statutory authorization for recovery of these costs.

And so McIntyre may recover $402.00 in costs incurred for the filing fee but may not recover his other costs. The Court should tax $402.00 in costs.

### D. Post-Judgment Interest

McIntyre seeks post-judgment interest on the on the amounts owed to him and his counsel. *See* Dkt. No. 16 at 32.

McIntyre is entitled to post-judgment interest. "Interest shall be allowed on any money judgment in a civil case recovered in a district court" and "[s]uch interest shall be calculated from the date of entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). McIntyre is entitled to an award of post-judgment interest at the rate published for the week ending prior to the date of judgment until the date paid. *See id.* The Court should award post-judgment interest on the date that it enters judgment.

## VI.    Joint and Several Liability

The "overwhelming weight of authority" holds that an employer is jointly and severally liable under the FLSA for unpaid wages. *Donovan v. Grim Hotel Co.,* 747 F.2d 966, 972 (5th Cir.1984); *see also Lee v. Coahoma Cnty., Mississippi,* 937 F.2d 220, 226 (5th Cir.1991) ("If an individual with managerial responsibilities is deemed an employer under the FLSA, the individual may be jointly and severally liable for damages resulting from the failure to comply with the FLSA."), *modified on other grounds,* 37 F.3d 1068 (5th Cir.1993); *Moreno v. Edcare Mgmt.,* 243 F.R.D. 258, (W.D. Tex. 2007) ("All entities that are employers within the meaning of the FLSA are

jointly and severally liable for all damages that stem from failure to comply with the provisions of the FLSA.") (citing cases).

The undersigned has found that both CBC and Johnson are employers under the FLSA. And so the Court should hold them jointly and severally liable for McIntyre's damages under the FLSA.

## Recommendation

The Court should grant Plaintiff's motion for default judgment, enter a default judgment against Defendants, and allow Plaintiff to recover, jointly and severally from CBC and Johnson, $2,698.13 in unpaid wages, $3,898.13 in liquidated damages, $11,925.00 in attorneys' fees, and $402.00 in costs, for a total of $18,923.26, as well as post-judgment interest at the prevailing legal rate until paid.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. See *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 19, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE